UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RICKY WAYNE BECKETT, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:17-CV-0168 |
| | § | |
| UNIVERSITY OF TEXAS MEDICAL | § | |
| BRANCH- TDCJ MANAGED CARE, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

In this civil rights suit, Plaintiff Ricky Wayne Beckett (former TDCJ #1883225)

proceeds *pro se* and *in forma pauperis*. At the time he filed suit, Beckett was an inmate

in the Texas Department of Criminal Justice–Correctional Institutions Division

("TDCJ"). Plaintiff sues thirteen defendants,[1] alleging that money was stolen or

withdrawn improperly from his inmate trust fund account and the error was not corrected

through TDCJ grievance channels. Five defendants (Region III; Step II Medical

Grievance Program Office of Professional Standards TDCJ Health Services Division;

---

[1]  Plaintiff's complaint (Dkt. 1) names thirteen defendants: "University of Texas Medical
Branch/Texas Department of Criminal Justice"; Patricia Lecuyer; Rebecca Noland; Tanya
Johnson; Lanett Linthicum, M.D.; Brad Livingston; "Region III [Regional Grievance
Department]"; "Step II Medical Grievance Program Office of Professional Standards TDCJ
Health Services Division"; Lorie Davis; S.J. Abke; "John Doe" Steward; Erin Jones, M.D.; and
Dianne Birks. Three defendants (Noland, Birks, and "John Doe" Steward) and have not been
served with process. *See* Dkt. 25, at 1 n.1; Dkt. 26, at 1 n.1; Dkt. 28. Although Plaintiff filed a
document entitled "amended complaint" that named Officer Mfon U. Ndiok and "A.M.
Stringfellow Unit" as additional defendants, Plaintiff did not seek the Court's leave to file
amended pleadings and these defendants are not properly before the Court.

Linthicum; Livingston; and Davis) have filed a motion to dismiss (Dkt. 25).[2] Five other

defendants (UTMB, Johnson; Jones; Abke; and Lecuyer) have filed a separate motion to

dismiss (Dkt. 26). Plaintiff, after being granted an extension of time, filed objections to

the motions (Dkt. 41). In addition, Plaintiff has filed a motion for appointment of counsel

(Dkt. 42), a motion for leave to amend his complaint (Dkt. 43), and a motion for

miscellaneous relief (Dkt. 47).

The motions are ripe for consideration. Having reviewed the evidence submitted,

the parties' briefing, the applicable law, and all matters of record, the Court concludes

that the motions to dismiss should be **GRANTED** and that all of Plaintiff's claims must

be **DISMISSED** for the reasons that follow.

## I.     BACKGROUND

Beckett alleges that on October 20, 2015, while he was incarcerated at TDCJ's

Stringfellow Unit in Rosharon, Texas, he submitted a form requesting a follow-up

medical appointment for a spreading skin infection. He was scheduled in the clinic for

October 23, 2015 (Dkt. 1, at 7). He states that on October 23, 2015, he was charged a

$100 fee for medical care. On November 17, 2015, he submitted a form to the medical

records department at Stringfellow "requesting to know . . . exactly why he was charged

$100.00 on 10/23/15" and stating that the charge was in error because the visit had been a

---

[2]     This motion also urges *sua sponte* dismissal on behalf of Dianne Birks, who is no longer
employed by TDCJ and has not been served, because the allegations against her are substantially
identical to those against Linthicum, Livingston, and Davis. *See* Dkt. 25, at 1 n. 1.

"follow up chronic care visit" (*id*.). He appears to allege that, as a chronic care patient, he was not required to pay any fee or co-pay for continuing care.[3]

Plaintiff maintains that in 2015 and 2016, he made multiple inquiries and complaints about the $100 charge to persons named as defendants in this suit, including Noland, Dr. Jones, Abke, Birks, Livingston, and Linthicum (*id*. at 8-10). He also alleges that he filed multiple grievances complaining about the withdrawal of funds, and pursued his grievances through both steps of TDCJ's two-stage administrative grievance process, but was denied relief (*id*. at 6, 9-12).[4]

Plaintiff executed his complaint in this lawsuit on May 19, 2017. He alleges that the defendants failed to act to address and correct the intentional theft of his inmate funds (*id*. at 13); failed to take disciplinary action "to curb the known pattern of illegal co-pay billing of offender by defendants Lecuyer and Noland" (*id*.); failed to call Dr. Jones as a "primary witness" (*id*. at 13-14); failed to take disciplinary action "to curb the known pattern of abuse of illegal co-pay charges for follow-up chronic care visits" (*id*. at 14); failed to redress the issue of the illegally charged co-pay for a chronic care appointment (*id*.); and failed with negligence and indifference to provide an adequate remedy for the

---

[3]    Similarly, Plaintiff alleges that on February 5, 2016, he requested a follow-up medical appointment with Dr. Jones for his skin condition, but that "medical administration personnel" failed to recognize that he was a chronic care patient (*id*. at 9-10).

[4]    Plaintiff also appears to allege that he had been charged "co-pay billing on October 28, 2014" for a dental appointment at the Goree Unit and that "a new dental treatment plan was started on that date (10/28/14)" (*id*. at 7 (emphasis deleted); *see id*. at 16). Plaintiff does not explain the significance of the new dental treatment plan. However, he appears to conclude based on the date that "defendants charged him co-pay illegally for a 'follow-up chronic care visit' when the medical records show that Plaintiff had in excess 5-days grace left on his 'old medical plan'" (*id*. at 7).

financial harm to Plaintiff (*id*. at 15). Plaintiff does not explain the involvement of each person or entity in the alleged wrongs.

Plaintiff seeks a declaratory judgment that his constitutional rights were violated; injunctive relief to restore his "illegally confiscated funds" totalling $200.00 ($100 for December 2014 and $100 for October 23, 2015); injunctive relief ordering defendants to cease "all future illegal acts of confiscation of monies" from his inmate trust fund account, to refrain from retaliation against Plaintiff, and to cease and desist from "charging plaintiff for any future follow-up treatments and or chronic care visits in the future"; compensatory damages; and punitive damages of $700,000 from UTMB (*id.* at 15-17).

## II.     STANDARDS OF REVIEW

### A.      The PLRA and *Pro Se* Pleadings

Because the plaintiff filed this suit as an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v.*

*Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

### B.     Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Smith v. Regional Transit Auth.*, 756 F.3d 340, 347 (5th Cir. 2014) (quoting *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005)). A motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove a plausible set of facts that establish subject matter jurisdiction. *Venable v. La. Workers'*

*Comp. Corp.*, 740 F.3d 937, 941 (5th Cir. 2013). The Court must "take the well-pled factual allegations of the complaint as true and view them in the light most favorable to the plaintiff." *In re Mirant Corp*, 675 F.3d 530, 533 (5th Cir. 2012).

### C. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) may be granted if the pleading "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In considering a Rule 12(b)(6) motion, courts generally must accept the factual allegations contained in the complaint as true. *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009). Federal pleading rules require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555 (quoting FED. R. CIV. P. 8(a)(2)). The complaint must, however, contain sufficient factual allegations, as opposed to legal conclusions, to state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678 (2009); *see Patrick v. Wal-Mart, Inc.*, 681 F.3d 614, 617 (5th Cir. 2012). The pleadings also must claim that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

When, on a motion under Rule 12(b)(6), matters outside the pleadings are presented and not excluded, "the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). However, "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac–Chevrolet,*

*Inc.,* 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000)).

### III.   DISCUSSION

#### A.    Official Immunity

UTMB and TDCJ are state agencies.  TEX. EDUC. CODE § 65.01 *et seq*.; TEX. GOV'T CODE § 493.001 *et seq*.  A claim against an official employed by TDCJ or UTMB in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas.  *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008).   Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity.  *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ*., 743 F.3d 959, 963 (5th Cir. 2014).  Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983.  *NiGen*, 804 F.3d at 394.

Plaintiff's claims against TDCJ, UTMB, and their subdivisions ("TDCJ Region III Grievance Department," "Step II Medical Grievance Program Office of Professional Standards TDCJ Health Services Division," and "Stringfellow Unit") are barred by the Eleventh Amendment.  In addition, to the extent Plaintiff sues any individual defendants in their official capacities as state employees, they are entitled to immunity under the Eleventh Amendment from claims for monetary damages.  *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052,

1054 (5th Cir. 1998) (extending immunity to TDCJ officers acting in an official capacity).  Because Plaintiff seeks redress for alleged past wrongs by state officials, and does not adequately allege an ongoing constitutional violation by defendants, his requests for declaratory and injunctive relief also are barred.  *See Green v. Mansour*, 474 U.S. 64, 73 (1985); *Fontenot v. McCraw*, 777 F.3d 741, 752 (5th Cir. 2015); *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011).

Accordingly, Plaintiff's claims against state agencies, their subdivisions, and state employees sued in their official capacity are dismissed for lack of subject matter jurisdiction.

## B.    Plaintiff's Due Process Claim

Plaintiff complains that his rights were violated when funds were improperly taken from his inmate trust fund account.  Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation.  See *Pratt v. Harris Cty., Tex*., 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002).  "A prisoner has a protected property interest in the funds in his prison account." *Rosin v. Thaler*, 417 F. App'x 432, 434 (5th Cir. 2011) (per curiam). The Fourteenth Amendment protects against the deprivation of one's property by state actors without due process of law. *See Parratt v. Taylor*, 451 U.S. 527, 536-37 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). However, if state law provides an adequate post-deprivation remedy, a negligent or intentional deprivation of property by state

officials' random and unauthorized action does not rise to the level of a constitutional violation. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Texas provides a remedy for inmates whose property has been taken in an unauthorized manner. *See Myers v. Klevenhagen*, 97 F.3d 91, 95 (5th Cir. 1996); *Marshall v. Norwood*, 741 F.2d 761, 764 (5th Cir. 1984); *Aguilar v. Chastain*, 923 S.W.2d 740, 743-44 (Tex. Crim. App. 1996); *see also* TEX. GOV'T CODE §§ 501.007, 501.008. Therefore, Beckett's claim that the defendants stole funds from his trust fund account is not actionable under 42 U.S.C. § 1983 and is legally unfounded. *See Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994).[5]

Beckett does not otherwise allege facts showing that his funds were improperly withdrawn. In that regard, Texas prisoners with the means to do so are required to pay an annual $100 fee or co-pay for medical services that they receive while in state prison. *See* TEX. GOV'T CODE § 501.063. Courts have consistently upheld the co-pay charged to Texas prisoners, rejecting arguments that it is unconstitutional. *See Morris v. Livingston*, 739 F.3d 740 (5th Cir. 2014); *McClarty v. Livingston*, No. 6:16-cv-454, 2016 WL 8453639 (E.D. Tex. Nov. 16, 2016); *Patrick v. Tenorio*, No. 3:12-cv-4690, 2013 WL 868318 (N.D. Tex. Feb. 4, 2013); *McClure v. Thaler*, No. 5:11-cv-180, 2012 WL 2885767 (E.D. Tex. May 31, 2012).

---

[5] The Court notes that Plaintiff's allegations against Noland, who is no longer employed by TDCJ (Dkt. 28) and has not been served, are that Noland engaged in 'neglect, abuse, [and] theft of inmate funds" (Dkt. 1, at 2). These claims are subject to dismissal under the authority discussed above.

Additionally, many of the defendants hold supervisory or administrative positions in TDCJ or UTMB (Dkt. 25, at 3; Dkt. 26, at 5). Absent personal involvement in a constitutional violation, supervisory liability cannot state a claim for relief under Section 1983. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011); *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006); *Oliver*, 276 F.3d at 742. To the extent Plaintiff brings claims against these defendants for their alleged failure adequately to supervise their subordinates, rather than their personal involvement in the alleged withdrawal of his funds, his claims fail on this additional basis.

Finally, to the extent Plaintiff complains about the handling of his grievances, a prisoner has no constitutional interest in having grievances resolved to his satisfaction. *Stauffer v. Gearhart*, 741 F.3d 574, 587 (5th Cir. 2014); *Geiger*, 404 F.3d at 373-74. Because Plaintiff was able to file grievances and receive a response from prison officials with written justification for their actions, he has not stated a claim for relief under the Due Process clause. *Stauffer*, 751 F.3d at 587.

The defendants' motions to dismiss are granted because Plaintiff has failed to state a claim upon which relief can be granted.

## C. Plaintiff's Other Filings

Plaintiff has filed three other requests for relief. First, after defendants moved to dismiss his complaint, Plaintiff moved for leave to amend his complaint (Dkt. 43). Rule 15(a) provides that a court "should freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). A court must have a "substantial reason" to deny a request for leave to amend. *Stem v. Gomez*, 813 F.3d 205, 215 (5th Cir. 2016). Leave to

amend is not automatic, and the decision to grant or deny leave to amend "is entrusted to the sound discretion of the district court." *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012) (internal citation and quotation marks omitted). A district court "should consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 466-67 (5th Cir. 2012) (quoting *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996)).

Plaintiff's proposed amended complaint seeks to drop multiple defendants and to drop his official capacity claims. He continues to urge the same substantive claim about withdrawal of funds from his inmate trust fund account and various officials' responses to his complaints about the withdrawals (Dkt. 43). These claims would be subject to dismissal under the authority cited above. *See Parratt*, 451 U.S. at 536-37; *Hudson*, 468 U.S. at 533; *Stauffer*, 751 F.3d at 587. The Court in its discretion therefore denies Plaintiff's motion for leave to amend because the amendment would be futile. *See Am. Int'l Refinery*, 676 F.3d at 466-67; *Duzich v. Advantage Finance Corp.*, 395 F.3d 527, 531 (5th Cir. 2004).

Second, Plaintiff has filed a motion for appointment of counsel (Dkt. 42). Given the holdings above dismissing Plaintiff's claims, this motion is denied as moot.

Finally, Plaintiff has filed a motion regarding the conditions of his parole (Dkt. 47), following his recent release from TDCJ. Most allegations in the motion are irrelevant to the claims before the Court in this lawsuit regarding withdrawal of funds

from Plaintiff's inmate trust fund account. However, to the extent Plaintiff complains

that he has been denied access to courts to litigate this suit, the motion is denied as moot.

## IV.    CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1.    The defendants' motions to dismiss (Dkt. 25, Dkt. 26) are **GRANTED**.

2.    All of Plaintiff's claims are **DISMISSED with prejudice** for failure to state a claim pursuant to Rule 12 and 28 U.S.C. § 1915(e)(2)(B).

3.    Plaintiff's motion for leave to amend his pleadings (Dkt. 43) is **DENIED**.

4.    Plaintiff's motion for appointment of counsel (Dkt. 42) and motion regarding conditions of parole (Dkt. 47) are **DENIED  as moot**.

A separate final judgment will issue.

SIGNED at Galveston, Texas, this 19th day of September, 2018.

George C. Hanks Jr.
United States District Judge